## Case No. 10,894.

### PECK v. PEASE.

[5 McLean, 486.] [1]

Circuit Court, D. Michigan. June Term, 1853. [2]

TERRITORIAL GOVERNMENT OF MICHIGAN —POWER TO ADOPT BUT NOT TO ENACT LAWS — CHANGE MADE IN ACT UPON ADOPTION—CORRECTION.

1. The governor and judges in the first stages of the territorial government of Michigan had power to adopt the laws of the respective states, but had no legislative authority.

2. A law adopted from Vermont in 1820, was adopted in the statute of limitations, in which the word "or" was used instead of the word "and," giving the benefit of the statute to a person beyond the limits of the state, whereas the Vermont statute required the person not only to be beyond the limits of the state, but of the United States. In 1825 a commission to revise the laws, which was authorized to alter, or report new bills, &c.—the report included the law in question, with others, and in 1827 all the laws in force were published by authority—there being no alteration in this act. There was another revision of the laws in 1838, which was again published by authority, making no alteration in this act. *Held*, that under the circumstances the court could not look back to the law of Vermont to correct any error on the first adoption of the law.

[This was an action at law by John Peck, survivor, etc., against William C. Pease.]

Mr. Barstow, for plaintiff.
Mr. Emmons, for defendant.

OPINION OF THE COURT. This is an action of debt, brought on a judgment rendered in the territorial court of Michigan in 1836. There are counts in the declaration on a promissory note. Among other defences, the defendant pleaded the statute of limitations. The plaintiff replied that he was beyond seas, to wit: in the state of New York, to which replication the defendant demurred. The 10th section of the act of limitation of 1820, which act was adopted by the governor and judges of the territory, provides, "that this act shall not extend to bar any infant, feme covert, person imprisoned, or beyond seas, or without the United States," &c., from bringing either of the actions before mentioned within the term before set and limited for bringing such actions, calculating from the time such impediment shall be removed. The limitation of all actions on judgments was eight years next after the rendition of such judgments; on promissory notes attested, eight years; if not attested, six years. The above section was printed in the act of 1820, and in all the revised laws up to 1838, and no doubt has arisen as to its construction. The words "or beyond seas," have been uniformly construed to mean, without the state, by the courts of Michigan and of the United States, sitting within the territory of the state of Michigan. But it is alleged that within a few years, on the exam-

ination of the records in the office of the secretary of state, it is found that the words "beyond seas" were erased in the original bill, as appears from a note on the margin of the record, though they are copied in the body of the record. And the secretary of state certifies, that the marginal note appears to have been made in the same handwriting, with the same ink and pen as the body of the record. Omitting the words erased, the saving clause would read, "or without the United States," which would exclude the plaintiff from the benefit of the statute, as he avers himself to be a citizen of New York.

Under the first grade of the territorial government of Michigan, the governor and judges were authorized by the ordinance of 1787, to "adopt" laws of the original states, for the government of the territory, and the law in question seems to have been adopted from the state of Vermont. They had no legislative power, consequently they had no power to modify or alter the laws they adopted. The words used in the Vermont law are, "or beyond seas, without the United States." To be within the exception, it is admitted, an individual must not only be beyond seas, but without the United States. The words "beyond seas" in the Vermont statute must have been used for some purpose, and they should not have been erased from the adopted statute. The production of the original bill as adopted by the governor and judges, would be more satisfactory than the record of it. I am not aware that there was any law requiring this record, or making a certified copy of it, evidence. But be this as it may, conceding that this bill when reported was as certified from the record, it becomes a serious question whether that can now be held as the law. There can be no doubt, that a case may arise in which the original bill as enacted or adopted may be referred to, to correct an error in the printed act. And in such a case the court are to judge by inspection, and not a jury. It is true that an issue of nul tiel record is sometimes, in New York, and perhaps in other states, concluded to the contrary; but the variance is much more appropriately referred to the court. And so in regard to variance between the printed statute, and the original enrolled bill. If a question of fraud arises in regard to the alteration, it should be referred to a jury.

On the 21st of April, 1825, the legislative council of Michigan appointed certain individuals to revise the laws of the territory of Michigan, and they were required to examine all the laws then in force, and to revise, consolidate, and digest the same, upon the following principles: First. All the acts upon the same subject shall be digested into the same act. Second. The principles of the existing acts may be preserved, or such alterations or additions may be made as the said commission may deem expedient. Third. Acts not considered necessary by the commission may be omitted, and deficiencies may

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 18 How. (59 U. S.) 595.]

be supplied by new acts, &c. On the 27th of December, 1826, the commissioners made their report to the legislative council of the territory, and they say: "Aware of the importance of the trust confided to them, and of the deep interest the community necessarily has in its faithful execution, they have been solicitous and persevering in their endeavors so to amend. simplify, and generally to improve the statutes, as that most of the evils and inconveniences under the present system may be removed." And they further say: "Upon the principles of existing acts, and in making such alterations and additions as the commission might deem expedient, they have, according to the direction of the legislative council, exercised fully the powers with which they were invested." "Considerable alterations and several additions have been made in many of our present statutes, wherever practical evils. have already been found to arise in the protection of private rights," &c. "Great care, however, has been taken, in making such alterations, not to infringe upon principles long established, and which in their application have generally been found convenient and salutary," &c. "They have, in a few instances, altogether omitted a statute, and in many others have found it necessary to report those which were entirely new." On the 29th of December, 1826, Mr. Dole, of the legislative council, moved that said commissioners be discharged from the duties imposed by the resolutions of the legislative council of the 21st April, 1825, and that the report now before the council be accepted; and the motion was decided in the affirmative. The legislative council, on the 13th of April. 1827, by a resolution, required the governor to have a proper index, and marginal notes prepared for the volume of laws passed at that session; and also a translation and explanation of such Latin or technical words and phrases as may appear to require the same, &c. And there was annexed to the volume of laws, reported by the commissioners, and published by the legislature, the explanations and notes required by the resolution. At the last term of the court, when this question was before us, in recognizing the printed act as the law, we relied chiefly on this revision of the statutes. At the present term, on an application to the court to reconsider their former decision on this subject, I was startled at the assertion confidently made, that there was no evidence in the acts of the legislative council which showed a sanction or adoption of the laws revised; although ever since the publication of the volume, it had been received and acted upon by the courts of the state and of the United States, as containing the laws of Michigan. And it was said that the revision referred to was nothing more than a reprint of the laws. This announcement, made by gentlemen of the bar, was so novel and startling, that in my own mind I at once determined to inquire into the facts asserted. I am exceedingly

gratified that this re-investigation has been had, as it has convinced us, beyond a doubt, of the soundness of our former decision.

We are requested to defer any action on this question, as it is pending before the supreme court of this state, and in a short time must be decided by that tribunal. And we learn that a similar question has been decided informally, on the circuit, by one of the judges of the supreme court. On further examination. it seems that no such decision has been made by one of the supreme judges of the state, and this court would not do the injustice to any member of' that court, to consider as a decision, a casual remark, not intended by him to be a judgment of the court. This court have shown no unwillingness to follow the settled construction of the statutes of the state, by the supreme court of Michigan. In one case, at least, we have done so, by overruling our own deliberate convictions, elaborately expressed, before the state court had given an opinion. I refer to the general act incorporating banks in Michigan.

In no proper sense can the question before us be considered the construction of a state statute. The act of limitations, as it formerly stood upon the statute book of the state, is clear and ambiguous. It has uniformly been construed in the same way, first, by the territorial and afterward by the state courts of Michigan. And the attempt is now made to go back to the adoption of that law, under the federal jurisdiction, to show that it was inaccurately printed. This, in our judgment, can be of no importance; if the revision of the laws under the resolution of the 21st of April, 1825, was sanctioned by the state. The power of commissioners was limited only by their discretion, and extended to all public acts then in force in the territory. And in their report they say that they have fully exercised the powers vested in them. Some acts they modified, they made additions to others, and some they reported entirely new. Some acts were reported without change. Now in regard to such acts. the judgment of the commissioners was as much exercised as where alterations were made. They examined these acts, and believing their provisions to be salutary, they reported them without modification. They were reported by the commissioners, adopted by the legislature, and published as laws in the volume of 1827, and they have been so received and acted upon by all the public authorities from that time to the present. It is objected that the laws contained in this volume have not been formally enacted and adopted. The report was "accepted" without alteration; the laws were reported as laws, having the forms of enactments, and they were "accepted" as such. Whether the word "adopted" would have been a more appropriate word. can be of no importance. The word "accepted" is sufficiently significant. It shows the sanction of the legislative council to the laws as reported, and the future action

of the same body, in the printing and distribution of the volume, and the subsequent recognition of the laws by the public authorities of the country, state and federal, puts to rest all question as to their validity.

The validity of laws reported by the commissioners depends upon the sanction given to them by the legislative council. No law contained in that report can derive any force from its original adoption by the governor and judges. The commissioners had. power to reject or modify those laws, or to substitute others in their place. If the origin of the law may be examined as a test of its validity, what is to be the test of those laws altered by the commissioners, or of those which they originated? Such an idea is inadmissible. The laws derive their validity from the action of the commissioners, sanctioned by the law-making power. And this applies as well to laws reported without alteration, as to those altered or originated by them. If validity be not imparted to them in this manner, who can measure the extent of injury which must result to society? For nearly thirty years the laws reported by the commissioners have been the basis of contracts—of judicial action. Rights in the territory and in the state have grown up under their protection. If all of them are to be declared void, except those adopted by the governor and judges, as they must be if they never had the legislative sanction, and especially those altered by the commissioners, and those which they originated, no one can see the effect on established rights. To avoid such consequences, under the circumstances, and after so great a lapse of time, the doctrine of presumption might be relied on. Acts of parliament have been presumed—not because such acts had been passed, but on the ground of public policy. No such presumption is necessary in the case before us. We have the action of the legislative council adopting the reports of the commissioners. The rules ordinarily applied in a legislative body, in acting upon the report of a committee, had no application in this case. The laws reported were matured in form and substance, and required only the legislative sanction to give effect to them: and that was given. The signature of the governor, if necessary, would be presumed. This whole proceeding in regard to the adoption of the laws by the governor and judges, and also, the action of the commissioners, and the legislative action of the council, took place under the authority of the United States: and, we suppose the courts of the United States are the proper tribunals to determine the effect of such a procedure. In this respect, the state courts would not seem to have the power to establish the rule of construction which this court will follow, as of an ordinary statute of the state.

By the act of April 13, 1827, the legislative council of the territory declares, "that all acts in force on the first day of November

last, are repealed, with certain exceptions." And by the second section of that act, it is declared "that all acts passed since the first day of November last, shall be in force and take effect on the 1st day of January next." This embraces the acts reported by the commissioners, and sanctioned by the legislative council, and is conclusive. The statute of limitations was reported by its title in the form as originally adopted, and this sanctions the form as it now stands. And whether it was altered by commissioners or not can be of no importance. The provisions, as they stand, were sanctioned by the report, and we can not look behind it for the law. Admit the mistake occurred, as alleged, originally in copying the law, this report of the commissioners is binding, and embodies the law, as authoritatively published in the laws. And afterwards, in the year 1833, there was a second revision of the laws, in which the section of the statute in question was again adopted and authoritatively published, and remained and was acted on as the law of Michigan until the year 1838. To hold that, under such circumstances, we must go back to the first adoption of this law by the governor and judges, would disregard the rights of parties for many years, and, as it seems to us, the settled rules of construction.

It is alleged by counsel that in the case of Brown v. Brown [Case No. 1,993], there was a decision in this court adverse to the one made in this case. In that case the statute of limitation was pleaded. The plaintiff replied that she was beyond seas, to wit: in the state of New York, the defendant demurred, and at the October term of 1841, the court held that the words "beyond seas" were equivalent to beyond the jurisdiction of the state. The demurrer was therefore overruled. At the June term, 1845, an affidavit being made in the same case, and certified copies produced, showing that the words "beyond seas" had been erased from the original bill, as appeared from the record of it in the secretary of state's office. the counsel agreed to set aside the former judgment, and entered a judgment sustaining the demurrer. This was done by the counsel without argument, and without calling the attention of the court to the subject. An entry thus made is not an authority to be cited in other cases. There was, in fact, no judgment of the court. Counsel, however agreed, can not consent to a decision, without a judgment of the court, so as to make it an authority. On inquiry, we are informed that in 1827 laws were adopted by the governor and judges, by copying them into a record, and that no original bills were made out. The record was, in effect, the original bill, so adopted. And it appears that the commissioners under the act of 1827, where no alterations were made in acts. reported them by their titles.

We adhere to our former decision in overruling the demurrer in this case, and hold that the statute of limitations adopted in 1820

by the governor and judges, had the force of law, after it was reported by the commissioners, as all other laws embraced in that report, not by virtue of their original adoption, but in virtue of their being so reported and adopted by the law-making power. The motion to reconsider the decision of the last term is overruled.

[The judgment of this court was affirmed by the supreme court, where it was carried on writ of error. 18 How. (59 U. S.) 595.]